UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RAUL RUIZ-IBANEZ, A36-964-665,

    Petitioner,

   -v-                 13-CV-553-JTC

ERIC H. HOLDER, Attorney General
of the United States;

JANET NAPOLITANO, Secretary of
Security U.S. Department of Head of Homeland
Security;

MICHAEL PHILIPS, Field Office Director
for Detention and Removal, Buffalo Field
Office, Bureau of Immigration and Customs
Enforcement;

DEPARTMENT OF HOMELAND SECURITY; and

TODD TRYON, Facility Director, Buffalo
Federal Detention Facility,

    Respondents.

---

## **INTRODUCTION**

   Petitioner Raul Ruiz-Ibanez, an alien under a final order of removal from the United States, has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from detention in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement (collectively, "DHS"), pending the execution of a final immigration order of removal issued against him. Item 1. As

directed by this court's order entered June 10, 2013 (Item 2), respondent[1] has submitted an answer and return (Item 4), along with an accompanying memorandum of law (Item 5), in opposition to the petition, and petitioner has submitted a reply (Item 6).

For the reasons that follow, the petition is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Petitioner, a native and citizen of Panama, was admitted to the United States at Miami, Florida, on or about July 13, 1982, with IR2 immigration status (Immediate Relative–Unmarried Child Under 21 Years of Age of a U.S. Citizen). *See* Item 4-1 (Declaration of DHS Deportation Officer Juanita Payan), ¶ 5. DHS records reflect that petitioner was convicted of the following criminal offenses while present in the United States:

    a.    On or about April 8,1995, petitioner was convicted in Syracuse, New York, City Court of Criminal Possession of a Controlled Substance (cocaine) in the 7th Degree, and was sentenced to 3 years probation.

    b.    On or about March 19, 1996 , petitioner was convicted in Dewitt, New York, Town Court of Petit Larceny, and was sentenced to 3 years probation. On January 28, 1997, petitioner was convicted of violating the conditions of probation, and was re-sentenced to a 6-month term of incarceration.

    c.    On or about March 10, 1997, petitioner was convicted in Syracuse City Court of Criminal Possession of Marijuana in the 4th Degree, and was sentenced to 90 days incarceration.

    d.    On or about March 3, 1998, petitioner was convicted in Syracuse City Court of Criminal Possession of Marijuana in the 5th Degree, and was granted a conditional discharge.

---

[1] The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

e. On or about October 6, 1999, petitioner was convicted in Onondaga, New York, County Court of Criminal Possession of Marijuana in the 2nd Degree, and was sentenced to 5 years probation. On August 7, 2002, petitioner was convicted of violating the conditions of probation, and was re-sentenced to a 1-year term of incarceration.

f. Also on August 7, 2002, petitioner was convicted in Onondaga County Court of Criminal Possession of a Controlled Substance in the 3rd Degree (narcotic drug, with intent to sell) and Robbery in the 1st Degree (display of apparent firearm). He was sentenced to a term of incarceration of 8-16 years on the drug conviction, and a term of incarceration of 8 years on the robbery conviction.

*Id.* at ¶ 6.

On July 3, 1998, petitioner was encountered by DHS officers at the Onondaga County Jail and, upon verification of his immigration status, was served a Form I-862 Notice to Appear ("NTA") charging him with being subject to removal from the United States pursuant to Section 237(a)(2)(B)(I) of the Immigration and Nationality Act ("INA") (8 U.S.C. § 1227(a)(2)(B)(I)), as an alien who has been convicted of a controlled substance offense. Item 4-2 (Exh. A to Payan Decl.), pp. 19-21. On December 9, 1998, petitioner was served with notice of an additional charge of being subject to removal pursuant to INA § 237(a)(2)(A)(iii) (8 U.S.C. § 1227(a)(2)(A)(iii)), as an alien who has been convicted of an aggravated felony, as defined in INA § 101(a)(43)(B) (8 U.S.C. § 1101(a)(43)(B)). *Id.* at 18.

On July 16, 1999, an Immigration Judge ("IJ") ordered petitioner removed from the United States to Panama. *Id.* at 17. The IJ subsequently granted petitioner's motion to reopen his removal proceedings pending consideration of his application for cancellation of removal pursuant to INA § 240A(a) (8 U.S.C. § 1229b(a)). *Id.* at 9. On December 3, 1999, an IJ determined that petitioner was ineligible to seek cancellation of removal due to his aggravated felony conviction, and ordered petitioner removed from the United States

to Panama. *Id.* Petitioner appealed this order to the Board of Immigration Appeals ("BIA"), and on April 2, 2002, the BIA denied the appeal, thereby rendering the IJ's removal order final. *Id.*; *see* 8 C.F.R. § 1241.1(b) (order of removal becomes final upon BIA's dismissal of appeal).

On February 14, 2012, petitioner was received into DHS custody upon his release from the custody of the New York State Department of Corrections and Community Supervision ("NYSDOCCS"). Item 4-1, ¶ 12. On February 17, 2012, DHS sent a presentation packet to the Consulate General of Panama ("Consulate") in New York City requesting that a travel document be issued for petitioner's removal. *Id.* at ¶ 14. On March 5, 2012, DHS served petitioner with a Warning for Failure to Depart (Form I-229(a)), advising petitioner of penalties under the INA (including criminal sanctions and extension of the removal period) for, among other things, failing to fully cooperate with the administrative removal process or taking action designed to prevent or hamper his departure from the United States. Item 4-2, p. 15. Petitioner also received an instruction sheet listing actions required to be completed within 30 days to assist in obtaining a travel document. *Id.* at 16; *see also* Item 4-1, ¶ 15.

On April 23, 2012, DHS received a travel document from the Panamanian Consulate for petitioner's removal from the United States to Panama, and DHS made arrangements for petitioner to travel to Panama on May 15, 2012. Item 4-1, ¶ 17; Item 4-2, pp. 22-24. However, on May 11, 2012, petitioner's representative filed with the U.S. Immigration and Citizenship Services ("USICS"), on petitioner's behalf, an updated Form I-918 application for a "U Nonimmigrant Visa" (victim of criminal activity; INA § 101(a)(15)(U)), and on May 15, 2012, USICS determined that petitioner is *prima facie* eligible for U Nonimmigrant

classification. Item 4-1, ¶ 18. On June 11, 2012, DHS notified petitioner's representative that it had granted his request for a six-month stay of removal pending a final determination of petitioner's U Visa application. Item 4-2, pp. 13-14. Petitioner's request for continuation of the stay, which expired in December 2012, was denied by DHS by notice dated January 4, 3013. *See id.* at 11-12.

Meanwhile, on or about May 22, 2012, petitioner was notified that DHS had reviewed his custody status and determined to continue his detention, based upon the totality of information in petitioner's file– particularly, his "extensive and violent criminal history"– indicating that he would be a threat to the community if he were to be released from custody. *Id.* at 8-10. Further custody status reviews have been conducted by DHS at regular intervals, in accordance with immigration regulations. Following the completion of each review, DHS notified petitioner that his detention would continue. Item 4-1, ¶ 23; Item 4-2, pp. 2-5.

DHS records further reflect that on January 8, 2013, USICS denied petitioner's application for a U Nonimmigrant Visa. Item 4-1, ¶ 26. Petitioner's appeal from this determination remains pending with the USICS Administrative Appeals Office ("AAO"). *Id.*

Petitioner filed this action on May 24, 2013, seeking habeas corpus relief on the ground that his continued detention in post-removal-order custody is unlawful since it has exceeded the presumptively reasonable six-month period established under the due process standards set forth by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

**DISCUSSION**

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas*, 533 U.S. at 687 (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings, and pending removal following the entry of a final order of removal, are governed by two separate provisions of the INA–respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order. In this case, petitioner's detention at the time he filed his habeas petition was pursuant to INA § 241(a), which requires the Attorney General to accomplish an alien's removal from the United States within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

> (I)  The date the order of removal becomes administratively final.
> (ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory. *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien."). The statute also authorizes the Attorney General to continue detention of criminal aliens–*i.e.*, aliens ordered removed due to conviction of a crime (like petitioner here)–beyond the expiration of the ninety-day removal period if it is determined that the alien "is a risk to the community or unlikely to comply with the order of removal …." INA § 241(a)(6).[2]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process. The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699-700. Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …." *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable

---

[2]INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal. Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(d)(1). The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents." 8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released. 8 C.F.R. § 241.13(g)(1). However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination. *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, in this case petitioner was released from the custody of the NYSDOCCS on February 14, 2012, and was immediately received into DHS custody for detention at the Buffalo Federal Detention Center. As an alien under a final order of removal, petitioner was subject to mandatory detention for the ninety-day removal period pursuant to INA § 241(a), and thereafter, his continued detention has been authorized by INA § 241(a)(6), since he is a criminal alien who has been determined to be a risk to the community or unlikely to comply with the order of removal if released from custody.

Under *Zadvydas*, the first six months of detention pending execution of a final order of removal are "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. Once the six-month period has passed, the burden shifts to the alien detainee to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Only if the alien makes this showing does the burden shift back

to the government, which "must respond with evidence sufficient to rebut" the alien's showing that there is no significant likelihood that he or she will be deported in the reasonably foreseeable future. *Id.*; *see also Wang*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights.").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*. The petition sets forth no factual basis to substantiate petitioner's belief that there is no significant likelihood he can be removed to Panama in the reasonably foreseeable future. Indeed, the Panamanian Consulate issued a travel document for petitioner on April 4, 2012, soon after his detention in DHS custody commenced, and well within the mandatory ninety-day detention period. As set forth in respondent's submissions in response to the present petition, this travel document "does not expire, [and] is valid for one entry into Panama." Item 4-1, ¶ 17.

Upon receipt of the travel document, DHS made arrangements for petitioner to travel to Panama on May 15, 2012. However, upon learning of petitioner's renewed U Visa application, followed by USICS's determination of *prima facie* eligibility for U Nonimmigrant status, DHS canceled the travel arrangements and granted petitioner's request for a six-month stay of removal. Then, when USICS denied the U Visa application in January 2013, petitioner appealed this determination to the USICS AAO. The information presently before the court indicates that DHS has been in regular contact with USICS to ascertain the status of the appeal, which remains pending. *See* Item 4-1, ¶ 24.

These circumstances provide a reasonable basis for DHS's determination, grounded in regulatory policy, to delay execution of the final order of removal until petitioner's Form I-918 determination has become administratively final, *see* 8 C.F.R. § 214.14(c)(5)(ii) (denial of Form I-918 petition deemed administratively final upon issuance of AAO's decision affirming USICS denial), as well as a basis for this court's conclusion that petitioner's continued detention in DHS custody can be primarily attributed to his own conduct in pursuit of administrative relief. *See Sanusi v. I.N.S.*, 100 F. App'x 49, 51 (2d Cir. 2004) (six-year duration of detention, while "extremely regrettable …," did not violate due process "because the detention has been prolonged primarily by [the petitioner]'s pursuit of final judicial review of his claims …") (*citing Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1992) (although petitioner's litigation strategy in pursuit of administrative relief "is perfectly permissible, …[he] may not rely of the extra time resulting therefrom to claim that his prolonged detention violates substantive due process.")).

In addition, the available statistical evidence reveals that in recent years, DHS has successfully repatriated significant numbers of aliens to Panama, indicating no institutional barriers to petitioner's removal. For example, DHS reports show that in fiscal year ("FY") 2009, a total of 199 aliens were repatriated to Panama; in FY 2010, 189 aliens were repatriated to Panama; and in FY 2011, 98 aliens were repatriated to Panama. *See* DHS Yearbook of Immigration Statistics: 2011, Table 41: http://www.dhs.gov/yearbook-immigration-statistics-2011-3. These circumstances provide a further basis for DHS's expectation that the necessary travel arrangements for petitioner's release from custody and his repatriation to Panama can be accomplished within the reasonably foreseeable

future following USICS AAO's final administrative resolution of petitioner's application for U Nonimmigrant status.

Significantly, petitioner has provided no evidence to contradict this expectation, or to otherwise establish that there is no significant likelihood of removal in the reasonably foreseeable future. Instead, petitioner relies solely on the fact that his detention has exceeded the presumptively reasonable six-month period established in *Zadvydas*. *See* Item 1, ¶¶ 16-18, 22, 29, 33, 36, 37, 39. However, the federal courts have consistently found the habeas petitioner's assertion as to the unforeseeability of removal, supported only by the mere passage of time, insufficient to meet the petitioner's initial burden to demonstrate that there is no significant likelihood of removal under the Supreme Court's holding in *Zadvydas*. *See, e.g., Singh v. DHS/ICE*, 771 F. Supp. 2d 372 (D.N.J. 2011) (sixteen month detention upheld where petitioner alleged "no facts to substantiate the conclusion that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future"); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible form to suggest that travel documents would not be issued); *Haidara v. Mule*, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (petitioner failed to meet initial burden where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future"); *Boncy v. Ashcroft*, 2006 WL 2927288, at *1 (E.D.Pa. Oct. 10, 2006) ("The six month presumption is merely a presumption, and Petitioner is required to produce some other evidence that his removal is unlikely to occur in the reasonably foreseeable future."); *Singh v. Holmes*, 2004 WL

2280366, at *5 (W.D.N.Y. Oct. 8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof).

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future …." *Zadvydas*, 533 U.S. at 701. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## **CONCLUSION**

For the foregoing reasons, the petition is denied, and the case is dismissed. This dismissal is without prejudice to file another petition should it subsequently appear that the presumptively reasonable period of post-removal-order detention has elapsed, and that removal is no longer reasonably foreseeable. *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: November 6, 2013
p:\pending\2013\13-553.2241.nov6.2013